Joseph La Costa, SBN 108443
Attorney at Law
7840 Mission Center Court, Suite 104
San Diego, CA 92108
Telephone 1-619-922-5287

Attorney for Plaintiffs
GREG  O. SHULL

UNITED STATES DISTRICT COURT

SOUTHERN  DISTRICT OF CALIFORNIA

GREG  O. SHULL,

    Plaintiff,

   v.

OCWEN FINANCIAL SERVICES
SRL,  LLC , a Florida Corporation,
doing business as T. D. SERVICES
COMPANY,  and DOES 1 TO 100
INCLUSIVE,

    Defendants.

CASE  '13 CV 1545 GPC RBB

VERIFIED COMPLAINT FOR:

1)  DECLARATORY RELIEF;

2)  FRAUD;

3)  VIOLATION OF CALIFORNIA
  B & P Code § 17200;

4)  QUIET TITLE;

5)  ACCOUNTING;

6)  INJUNCTIVE RELIEF;

7)  VIOLATION OF  CIVIL
  CODE§1572;

8)  ABUSE OF PROCESS;

9)  VIOLATION OF THE
  ROSENTHAL ACT;

10)  TO SET ASIDE A DEFECTIVE
  AND WRONGFUL
  FORECLOSURE;

-1-
_____
Complaint for Damages, Injunctive Relief, Declaratory Relief

# TABLE OF CONTENTS

1.  STATEMENT OF THE CASE……………….………………….…..... ...…....3

2.  JURISDICTION VENUE AND PARTIES……………….…...................4

3.  INTRODUCTION……….………………………….......................….....6

4.  THE ROLE OF MERS IN THE SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO PLAINTIFFS' HOME……………...….....................15

5.  OCWEN HAS NO INTEREST IN THE NOTE AND DEED OF TRUST…..........................…………………..……. . ..…............….….......…….19

6.  IN THE UNLIKELY EVENT MERS DID IN FACT AUTHORIZE THE ASSIGNMENT OF THE DEED OF TRUST, SUCH ACTION WOULD SEPARATE THE NOTE FROM THE DEED OF TRUST AND RENDER THEM BOTH UNENFORCEABLE…..................................................... .......................….....21

7.  DEFENDANTS DEBT COLLECTION EFFORTS…………….........……26

8.  PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT, MONETARY, LEGAL AND EQUITABLE DAMAGES.................29

9.  FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE  STATUS  OF DEFENDANT'S CLAIMS [28 U.S.C. §§ 2201]..........31

10.  SECOND CAUSE OF ACTION – NEGLIGENCE…………...............…33

11.  THIRD CAUSE OF ACTION – QUASI CONTRACT…………......……36

12.  FOURTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692, ET SEQ……..................................................................................…36

13.  FIFTH CAUSE OF ACTION – BUSINESS AND PROFESSIONS CODE 17200,  ET SEQ…………..……………..……….........................................…38

14.  SIXTH CAUSE OF ACTION – ACCOUNTING…………...............…40

15.  SEVENTH CAUSE OF ACTION – EXTORTION 18 USC § 1951(b)(2).40

16.  PRAYER FOR RELIEF……...........………………….............…...44

STATEMENT OF THE CASE

Plaintiffs, GREG SHULL, an Individual,  (Hereinafter referred as "Plaintiff") allege that Defendants are third-party strangers to a deed of trust and have no ownership interest entitling them to collect payment, declare a default or conduct a "trustee's" sale.  By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiff (and millions of other homeowners) into believing they have the right to collect on a debt in which OCWEN FINANCIAL SERVICES SRL, LLC  has no ownership interest whatsoever. In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts,  Defendants have resorted to "papering the file" by fabricating documents, employing individuals who have no authority to or personal knowledge of the facts to which they attest, and falsely representing to Plaintiff and **_to the Court_** that they have the right to take Plaintiffs' property away. Not only is Defendants' conduct <u>a criminal violation</u> of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4)[1], and an affront to the long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system. Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, establish a record as to the true holder in due course of the relevant Promissory Note ("Note") which is NOT any of the Defendants, and determine the status of Defendants' claims.

JURISDICTION, VENUE

This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.

This Court also has supplemental jurisdiction over the pendant state law claims

---

[1] Cal. Penal Code section 532(f)(a) provides that "a person commits a mortgage fraud if, with the intent to defraud, the person does any of the following…(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S. C. § 1367.

This Court has original jurisdiction over the claims in  this action based on 28 U.S.C. §1332, which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00

The unlawful conduct, illegal practices, and acts complained of and alleged in this complaint were all committed in the Southern District of California and involved real property located in the Southern District of California.  Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

1.     Plaintiffs are and  at all times relevant was,  residents of the county of San Diego, State of California and the lawful owner of a parcel of Real Property commonly known as:   1668 Fisherman Drive, Carlsbad, California 92011, County of San Diego.

2.     Defendant     OCWEN FINANCIAL SERVICES SRL, LLC (hereinafter "OCWEN"), is and at all times herein mentioned was conducting ongoing interstate business in the County of San Diego, State of California and on information and belief claims to be a Successor to FIRST GUARANTY FINANCIAL CORPORATION, which provided the financing for Plaintiffs' loan was evidenced by a Deed of Trust and Promissory Note.  At all times relevant they were doing business in the County of San Diego, California.

3.     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS"), at all times herein mentioned was a Corporation organized in the state of Delaware, and is an unnamed defendant.

4.     T. D. SERVICE COMPANY (hereinafter "T. D. SERVICE COMPANY"), at all times herein mentioned was a wholly owned subsidiary of OCWEN.

5.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 2 through 50, inclusive, and therefore sues these defendants by such fictitious names and all persons unknown claiming any legal or equitable right, title,

estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

6.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned each of the defendants sued herein was the agent and employee of each of the remaining defendants.   Plaintiffs allege that each and every defendant alleged herein ratified the conduct of each and every other defendant. Plaintiffs further allege that at all times said defendants were was acting within the purpose and scope of such agency and employment.  Whenever reference is made in the Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

7.   Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

8.   At all relevant times, each Defendant committed the acts, caused  or directed others to commit the acts alleged in the Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency as if acting as an agent of the other.

9.   At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that the other Defendants were engaged in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

## INTRODUCTION

10.   During the Mortgage Boom Era of 2002 to 2007, Wall Street investors

looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream – home ownership. Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals and under the promise that the booming real estate market would continue to boom. Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization". These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificate holders" of the securities that were to be fed by the toxic loans.

11.    Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of "Credit default Swaps."  Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

12.    However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were supposed to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificate holders"). These "true sales" allow the original lenders to move the notes off the books, eliminating the need to maintain capital adequacy reserves against default.   The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

13.    The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) The Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A

through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

14.    An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage). In this case, on information and belief, neither document was validly transferred.

15.    Here, Plaintiff alleges that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and Defendants did not acquire any legal, equitable, and pecuniary interest in Plaintiffs' Note and Deed of Trust.  As a result thereof  Defendants, which purports to be Plaintiffs' creditor actually have no secured or unsecured right, title, or interest in Plaintiffs' Note, Mortgage Deed of Trust and Residence, and have no right to collect mortgage payments, demand mortgage payments, or report derogatorily against Plaintiffs'  credit, or conduct any sort of 'non-judicial" foreclosure sale of Plaintiffs' property.

16.    Plaintiff alleges that the Defendants have not now, nor have they ever, owned any right, title, or interest in the Plaintiffs' Note, Deed of Trust, or property.

17.    Plaintiff further allege that, on information and belief that Defendants will claim they own Plaintiffs' Note and Deed of Trust has been dissolved due to the disbursement and receipt of mortgage insurance payouts to Defendants.

18.    Even if the Note and Deed of Trust were actually transferred away from the original lender, which Plaintiff asserts they were not, as a result of these mortgage insurance payouts OCWEN has been paid in full on Plaintiffs' debt obligation, if any.

19.   Nonetheless, Defendants attempt to take advantage of the complex structured financial system to defraud yet another homeowner.  Plaintiff anticipates that Defendants will seek a Court-sanctioned bailout by submitting blatantly fraudulent and fabricated "assignment" via a Request for Judicial Notice, thereby committing a fraud on the Court, and attempting to further mislead Plaintiff and the Court into believing OCWEN is an actual creditor, and entitled to enforce the underlying obligation, when in fact they have no such standing.

20.   Plaintiff does not dispute that money is owed money on the mortgage obligation.[1] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of the Note and Deed of Trust, and specifically what rights, if any, Defendants  have to claim a secured or unsecured interest in Plaintiffs' Note, Deed of Trust and Property in the face of overwhelming evidence that OCWEN is not the true holder of Plaintiffs' financial obligation.

21.   Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) Plaintiffs' research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Assignment of Deed of Trust"; 5) and an audit of multiple filings with the Securities and Exchange Commission ("SEC"), including multiple prospectus and  Pooling and Servicing Agreements ("PSA"), including the PSA , if any.

22.   On or about October 10, 2006, Plaintiff purchased the  home and obtained a loan evidenced by a Trust Deed and Note through FIRST GUARANTY  FINANCIAL CORPORATION, who is alleged to be the predecessor to OCWEN.

---

[1] However, simply because Plaintiff do not dispute  This fact, the Court should not condone OCWEN 's fraudulent and predatory mortgage servicing practices and allow it to collect on money it is not owed. Simply put, the Court should not allow OCWEN  to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

23.  On or about October 10, 2006, the Plaintiffs executed a Deed of Trust in favor of  FIRST GUARANTY  FINANCIAL CORPORATION.  COMMONWEALTH LAND TITLE COMPANY was named on the Deed of Trust as the "Trustee" and Mortgage Electronic Registration Systems (MERS) was named "Nominee of the Lender" and well as "beneficiary."

24.  Plaintiff alleges, believes, and thereon alleges that on or around the time of origination of Plaintiffs' loan, FIRST GUARANTY  FINANCIAL CORPORATION attempted to securitize and/or sell their loan to another entity or entities.  That entity was *not OCWEN.*

25.  Plaintiff alleges on information and belief that FIRST GUARANTY FINANCIAL CORPORATION never sold, transferred, or granted the Note or Mortgage to Defendant,  and that Defendant is merely a third-party stranger to the loan transaction.  Furthermore,  Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiffs' Note was ever properly endorsed, and transferred to Defendants  or any other claimed predecessor in interest to FIRST GUARANTY  FINANCIAL CORPORATION. In fact, Plaintiff has  requested that Defendants verify the validity of the debt. Although this information should be readily available to any mortgage servicer (and in fact, several documents recorded by or on behalf of the Defendants attest that said information is in possession of the filing declarant) Defendants have failed to provide any evidence to verify the owner and amount of Plaintiffs' Mortgage or validate the claim to Plaintiffs' debt obligation.

26.  The parties involved in the alleged Securitization and attempted transfer of Plaintiffs' Note and Mortgage failed to adhere to section 2.01 of the related PSA which requires that Plaintiffs' Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitization Trust (or its custodian) on or before the "closing date" indicated on the Prospectus. The "closing date" is the date by which all of the Notes and Mortgages must be transferred, if ever. The failure to do so results in the Note and Deed of Trust not being part of the Mortgage Loan Trust  res, such that it is

not a loan that OCWEN,  as trustee, can attempt to collect.

27.  Plaintiffs allege that no recorded assignment of the original Deed of Trust was executed before the closing date of the trust, and in fact the first fraudulent "assignment" that attempted to transfer any interest in the debt was  recorded on June December 12, 2011 – four years after the closing date of any Security Mortgage Loan Trust , and said assignment was fraudulently executed by someone who completely lacked the authority to do so. The lack of a timely or valid actual assignment of the Note and Deed of trust into the trust res the Security Mortgage Loan Trust  raises numerous red flags and further demonstrates that Plaintiffs' Note and Deed of Trust were not properly or actually deposited into the Security Mortgage Loan Trust  by the closing date, and that the lack of an actual assignment further demonstrates fatal securitization defects such that FIRST GUARANTY  FINANCIAL CORPORATION remained the Plaintiffs' creditor, and no interest was created in favor of Defendants. The transfer further violated the Bankruptcy Code, in that the transfer took place after Plaintiff had filed a Chapter 7 Bankruptcy proceeding without first seeking a relief from stay.

28.  The failure to deposit Plaintiffs' Note into the Mortgage Loan Trust  before the closing date is a violation of the PSA and of New York trust law. Consequently, OCWEN,  neither individually nor as trustee any Security Mortgage Loan Trust  can claim any legal or equitable right, title, or interest in Plaintiffs' Note, Mortgage, Deed of Trust or Property since Defendants  cannot take any action which is not authorized by the Securitization agreements that created and govern the trust.

29.  Plaintiffs do not allege or assert that they are a beneficiary or party to the PSA.  Rather, Plaintiffs allege that the failure to securitize the Note makes it impossible for Defendants  to claim, allege or assert that it was assigned, transferred or granted Plaintiffs' Note or Deed of Trust, or any interest therein, in any manner whatsoever.  Plaintiffs also allege that the failure to securitize the Note and Mortgage has resulted in an unperfected lien that Defendants cannot enforce in any manner

whatsoever, and that only its true successor  has any interest therein.

30.  Plaintiff relied on the misrepresentations of Defendants and have been damaged in the following ways: (1) multiple parties may seek to enforce the debt obligation against him; (2) the title to their home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiffs' home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiffs' home or get title insurance given the potential of competing claims between Defendants  and or a successor or assign; (3) Plaintiffs have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) they are unable to determine whether they sent their monthly mortgage payments to the right party since there are potentially competing claims as between multiple creditors; (5) thye has expended significant funds to cover the cost of litigation and related costs.

31.  In addition to seeking compensatory consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor Defendants such that any of them can collect Plaintiffs' mortgage payments, demand payment, engage in debt collection activities, or conduct a valid non-judicial foreclosure sale of the property to the exclusion of the true beneficial owner.

THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO PLAINTIFFS' HOME

32.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that administers the MERS System, a national electronic registry that purports to track the transfer of ownership interests and servicing rights in mortgage loans, including Plaintiffs' loan. In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system, pay annual fees for the electronic processing, and tracking of ownership and transfers of mortgages. Members contractually agree to

appoint MERS as their common agent on all mortgages they register in the MERS system. In essence, MERS privatized the mortgage recording system, creating a situation wherein a borrower can no longer go to the Office of the County Recorder and determine who their lender actually is at any given point in time.

33.  MERS is listed as grantee in the official records maintained at county register of deeds offices. The lenders were supposed to retain the interest in the promissory notes, as well as the servicing rights to the mortgages, not MERS.

34.  Plaintiff alleges that MERS did not affect assignment, transfer, negotiation, or sale of their Note and Mortgage to any Defendant or Doe Defendant.

35.  The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed"). The Trust Deed conveys a security interest and power of sale in the real estate to the Lender, not Chicago Title and not MERS.

36.  Because MERS is merely an electronic registration system and not a true pecuniary beneficiary it did not and could not grant, assign or transfer any true or pecuniary beneficial interest in Plaintiffs' Note and Mortgage to any of the Defendants. The Plaintiff anticipate that the Defendant's will produce a recorded "Assignment of Deed of Trust" of the Deed of trust, Dated December 12, 2011 and/or some other fraudulent documentation supportive of its claimed ownership interest.

37.  As will be shown below, and contrary to the recitations contained in the "Assignment" purportedly executed on December 12, 2011, MERS did not receive any valuable consideration for Plaintiffs' Note and Mortgage, and in fact, the "assignment" was a false document that was fraudulently executed on behalf of a stranger to the record. Contrary to the recitations contained in the "Assignment": (1) MERS did not receive any value or consideration for Plaintiffs' Note Deed of Trust, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiff Note and Mortgage; and (3) the purported signor was not the "Assistant Secretary" for MERS  or other corporate officer for MERS and lacked the requisite corporate and legal authority to effect an

actual "assignment" of Plaintiffs' Note and Deed of Trust (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiffs' Note and Mortgage, which Plaintiff claims it did not).

38.  Defendants then purported recorded "Assignment of Deed of Trust" of the Deed of trust, dated December 12, 2011 and/or some other fraudulent documentation supportive of its claimed ownership interest.   As will also be shown , and contrary to the recitations contained in the "Assignment" purportedly executed on December 11, 2011, MERS did not receive any valuable consideration for Plaintiffs' Note and Mortgage, and in fact, this "assignment", like the first "assignment" was a false document that was fraudulently executed on behalf of a stranger to the record. Contrary to the recitations contained in the "Assignment": (1) MERS did not receive any value or consideration for Plaintiffs' Note Deed of Trust, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiff Note and Mortgage; and (3) the purported signatory was not the "Assistant Secretary" for MERS  or other corporate officer for MERS and lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiffs' Note and Deed of Trust (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiffs' Note and Mortgage, which Plaintiff claims it did not). Also, MERS had lost its authority and right to "assign" or in any way transfer the deed of trust by the purported "assignment"  on December 12, 2011.

39.  In the unlikely event that the "assignments" and "substitutions" purportedly undertaken by or on behalf of the Defendants were effective and authorized by MERS (a fact that Plaintiff disputes), as will be shown below, such actions would themselves cause the Note and Deed of Trust to be "split", rendering both unsecured and unenforceable.

40.  MERS's own membership rules directly prohibit MERS from ever claiming ownership of any mortgages or negotiable instruments, including Plaintiffs'.  A successor-in-interest to the beneficial interest in the Trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its

members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust.  In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have a beneficial interest in any mortgage, that it does not loan money, and that it does not suffer a default if a borrower fails to repay a mortgage loan.   Therefore, MERS does not own Plaintiffs' Note and Deed of Trust, and did not and could not "grant, assign, or transfer" any interest therein to Defendants at any relevant time.

41.  As will be fully discussed below, the claimed purported "assignment" on December 12, 2011,  of Plaintiffs' Note and Mortgage create a fraudulent lien claim and is in direct contravention of the laws and customs of California.

42.  Therefore, based on the foregoing, MERS could not and did not, *in fact*, assign any interest to OCWEN  and/or the related trust  such that Defendants can demand mortgage payments or report Plaintiffs' payments as late, or undertake any action permitted under the Deed of Trust, including conducing a non-judicial foreclosure sale as fraudulently scheduled for July 3, 2013.

NO SUBSTITUTION OF TRUSTEE  CONVEYED  LEGAL AUTHORITY TO ANYONE TO ACT AS THE SUBSTITUTED TRUSTEE

43.  The Deed of Trust names COMMONWEALTH LAND TITLE COMPANY as Trustee.

44.  Plaintiff alleges that no such transfer ever occurred and that the signor is not and was not the "Assistant Secretary" for MERS.

45.  Provision 24 of the Deed of Trust governs the Substitution of Trustee. It provides in relevant part:

> "**Lender,** at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender**…….This procedure for substitution of trustee shall govern to the **exclusion** of all other provisions for substitution." (Emphasis added.)

46.  In violation of Provision 24 of the Deed of Trust, and Cal. Civ. Code section 2934(a), the lender failed to file a valid Substitution of Trustee.  Plaintiffs allege that the Notice of Trustee Sale and Notice of Default were filed by "T. D. SERVICES COMPANY" rather than COMMONWEALTH LAND TITLE COMPANY as set forth in all of the relevant mortgage documents.

47.  Defendants,  through their agent, T. D. SERVICES COMPANY,  recorded a fraudulent Substitution of Trustee/ OR FAILED TO RECORD SUCH DOCUMENT claiming that as the present beneficiary, MERS desired to substitute in T. D. SERVICES COMPANY  as the trustee.  Plaintiff alleges that no such substitution occurred due to the failure of the actual LENDER, as required in Provision 24 and Cal. Civ. Code section 2934(a) to effect the purported substitution.

48.  Plaintiff further alleges that signor is simply an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

49.  Signor is not and was not an "Assistant Secretary" for MERS and in fact, the Substitution was fraudulently signed without the actual lenders, knowledge or authorization.

50.  At all relevant times, Signor was a full time employee of T. D. SERVICES COMPANY, and was not an is not an "Assistant Secretary" of MERS.

51.  Even if MERS had any rights with respect to the Note and Deed of Trust (which Plaintiff denies) signor was never in any manner whatsoever appointed as an "Assistant Secretary" by MERS, and thus giving her no corporate or legal authority, or the lender's successors and assigns, to execute the purported Substitution.  This was an intentional act undertaken by OCWEN and done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

52.  The "Substitution" filed is a fraudulent document, and the execution, filing, and recordation of the document was created for the Purposes of facilitating and aiding

1    and abetting the illegal, deceptive and unlawful collection and attempts to collect on

2    Plaintiff obligation which is actually owned by a non-defendant.

3        53.  Attempting to "substitute" T. D. SERVICES COMPANY under said Deed

4    of Trust, as Defendants did here, does not allow defendants to act as the trustee under

5    the Deed of Trust since they had no demonstrable right to execute any "substitution" or

6    "assignment" related thereto.

7    **OCWEN  HAS NO INTEREST IN THE NOTE AND DEED OF TRUST**

8        54.  In addition, the Defendants on December 12, 2011,  falsely and fraudulently

9    caused "assignment" of the Deed of Trust to be attempted.

10        55.  On December 12, 2011, by way of  an employee of T. D. SERVICES

11    COMPANY falsely and fraudulently executed an "Assignment of Deed of Trust"

12    falsely and fraudulently affirming that he/she was an "Assistant Secretary" of

13    "Mortgage Electronic Registration Systems" and purporting to affirm receipt of "Good

14    and Valuable Consideration" in exchange for an "assignment" of the Deed of Trust in

15    favor of OCWEN.

16        56.  Plaintiff alleges that the signor is an individual who simply signs thousands

17    of property record documents without any legal or corporate authority whatsoever.  In

18    point of fact, at the time signor  signed the "Assignment" he/she was not then nor ever

19    the "Assistant Secretary" for MERS.

20        57.  At the time the "Assignment" was signed by signor he/she executed a

21    document pretending to be an "Assistant Secretary" of MERS and with such pretense

22    purportedly assigned the Deed of Trust to a client of her employer, on behalf of

23    OCWEN.

24        58.  The above referenced "Assignment" was fraudulently executed without the

25    knowledge or authorization of Defendants.

26        59.   Signor was never, in any manner whatsoever, appointed as the "Assistant

27    Secretary" by the Board of Directors of MERS, as required by MERS's corporate by-

28    laws and an adopted resolution by the Board of Directors of MERS, or its actual

successors. For that reason, Signor never had, nor has, any corporate or legal authority from Defendants, or the lender's successors and assigns, to execute the purported "Assignment."  This was an intentional act undertaken by OCWEN done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they evidenced by the instant debt collection activities and attempts to strip the ownership and possession of Plaintiffs' property.

60.  The "Assignment" is fraudulent lien claim, and the execution, filing and recordation of the documents was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of Plaintiffs' mortgage payments, as well as engaging in other debt collection activities, including scheduling a "Trustee's Sale" of the property without the authority to do so.

61.  Since the Note and Mortgage were not timely or properly  assigned to OCWEN, some unknown entity remained the beneficial owner of the Note and Mortgage.

62.  Plaintiff further alleges that, in the unlikely event Defendants have any interest therein, any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff by the Defendants, which amount is currently unknown, but will be determined upon conducting discovery.  Plaintiff believes this amount will be in excess of the amount of their obligation.

63.  Attempting, through a series of fraudulent acts, to "assign" or transfer a Deed of Trust to itself, as Defendants did here, does not allow enforcement of Plaintiffs' Note and Mortgage to the exclusion of the true beneficial owner.  As alleged herein, Plaintiffs' Note was not properly negotiated, endorsed, and transferred to Defendants who now seek to collect mortgage payments and/or engage in other unlawful collection practices including an unlawful non-judicial foreclosure of the Plaintiffs' property.

64.  Defendants further REFUSED to enter into a "Loan Modification" with

Plaintiff  GREG SHULL as the sole  responsible party for the loan which had been entered into by Plaintiff.

65.  California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or © a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

66.  On information and belief, none of the Defendants were or are present holders in due course of Plaintiffs' Note such that they can enforce Plaintiffs' obligation and demand mortgage payments or undertake any activities permitted under the relevant Deed of Trust including the collection of moneys or the exercise of rights under the Deed of Trust including the power of sale.

67.  On information and belief, Defendants were not, and are not, a nonholder in Possession of Plaintiffs' Note who has rights of the holder.

68.  If there is a holder in due course of Plaintiffs' Note at issue, pursuant to California Commercial Code section 3301, et seq. and/or the PSA, it is the entity that can actually establish a Pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiff Note and Mortgage.

69.  On information and belief none of the Defendants, were/are entitled to enforce Plaintiffs' Note pursuant to § 3309 or subdivision (d) of § 3418.

70.  Plaintiff allege that, prior to demanding mortgage payments from Plaintiff none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiffs' Note and/or Deed of Trust as required under California law - irrespective of who is actually in physical

possession of Plaintiffs' Note.

71.  Plaintiff alleges that, on information and belief, Defendants  and/or its agents are fraudulently enforcing a debt  obligation in which they have no pecuniary equitable or legal interest. Thus, Defendants's conduct is part of a fraudulent debt collection scheme to the detriment of the Plaintiff.

IN THE UNLIKELY EVENT MERS DID IN FACT AUTHORIZE THE ASSIGNMENTS AND SUBSTITUTIONS OF THE DEED OF TRUST, SUCH ACTIONS WOULD SEPARATE THE NOTE FROM THE DEED OF TRUST AND RENDER THEM BOTH UNENFORCEABLE.

72.  The function of the Deed of Trust was described in the document as follows: "This Security Instrument secured to Lender: (I) the repayment of the Loan and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."

73.  The limited capacity and function of MERS was explained in the Deed of Trust as follows:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

74.  The Note signed by the Plaintiff made no mention to MERS. In the event the "assignments" executed by the Defendants for their own benefit were in fact authorized by MERS, a fact that the Plaintiff disputes, as set forth above, the "assignment" sought to assign both the Note and Deed of Trust to the Defendants. However, MERS did not own the note, thus it could not assign the note, and its assignment of the Deed of Trust

to the Defendants separate from the note was of no force or effect.

75.  MERS is not the payee of the note and MERS never held the Note; therefore the language in the "assignment" of the Deed of Trust, purporting to transfer the promissory note is ineffective. Simply being a beneficiary or having an assignment of the deed of trust is not enough to be entitled to foreclose on a Deed of Trust. For there to be a valid assignment for the purposes of foreclosure both the Note and the Deed of Trust must be assigned.

76.  An "assignment" of the Deed of Trust separate from the note has no "force." MERS never held the promissory note, thus its assignment of the Deed of Trust to the Defendants separate from the note had no force.  MERS had no separate agency contract  regarding the loan, and therefore the December 12, 2011 assignment was invalid.

77.  If the holder of the Deed of Trust does not own or hold the note, the deed of trust serves no purpose, is impotent, and cannot be a vehicle for depriving the grantor of the Deed of Trust of ownership of the property described in the deed of trust. The sole purpose of the deed of trust is to secure the payment of the note.

78.  The very sole purpose of the deed of trust is to secure payment of the note.

79.  The very, and sole, purpose of a foreclosure sale pursuant to the Deed of Trust is to obtain funds for payment of the Note.

80.  If the holder of the Deed of Trust does not own or hold the note, and there were to be a foreclosure sale pursuant to the Deed of Trust, there is no assurance that the proceeds of the foreclosure would be used for the purpose intended by the Deed of Trust, i.e., to be applied as payment of, or on, the Note. That is not to say that the owner or holder of the note cannot arrange for an agent or nominee, acting on its behalf, to conduct a foreclosure for the benefit of the owner or holder of the Note.  But that is quite a different proposition from assertions that the holder of a Deed of Trust who does not own or hold the note has the power to transfer the note from the original Note holder to another and that an entity that does not own or hold the Note can

conduct a foreclosure under the Deed of Trust.

81.  The fact that the Note and Deed of Trust would now be "split" renders both unsecured, and gives rise to the potential of multiple claimants under the Note and Deed of Trust.

**DEFENDANTS DEBT COLLECTION EFFORTS**

82.  Plaintiff are informed, and believe and  thereon alleges that in spite of having no legitimate, demonstrable, and/or documented interest in the subject Mortgage Note the defendants  through its agents and employees, has undertaken multiple and ongoing overt acts to obtain moneys and ultimately title to Plaintiffs' property from the Plaintiff related to the Defendant's false claim of ownership of the Mortgage Note, including but not limited to:

    a.    Mailing monthly billing statements to the Plaintiff asserting a right to collect mortgage payments. (The names and identities of those individuals who have sent payment requests to the Plaintiff are unknown to the Plaintiff at this time, and discovery is necessary to properly identify same. Leave of the Court will be made to request an opportunity to file an amended complaint that fully and completely identifies the ongoing overt acts in this regard, as well as the identity of the Defendants employee or agent who authored the payment demands.) Payments in this regard total exceed $75,000.00.

83.  On December 17, 2012, Defendants  caused to be recorded and sent to the Plaintiff by and someone acting in the purported capacity as an "Agent for Beneficiary" sent a "Notice of Default and Election to Sell Under Deed of Trust" whereby Defendants  demand the payment of the Note by the Plaintiff.  In exchange for the payment demanded, the Defendants would agree to abandon their stated intent to take the Plaintiffs' property by way of non-judicial foreclosure based on the defendant's Defendants  false and fraudulent claim of entitlement to payments under the Mortgage Note the Plaintiff had executed.

84.  The December, 2012  "Notice of Default.", as well as all prior and subsequent "notices" sent to the Plaintiff by or on behalf of the Defendants failed to comply with Section 22 of the Deed of Trust that provides said notice "shall inform the Borrower of….the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

85.   A "Notice of Sale" was signed by an agent of OCWEN employed by T. D. SERVICES COMPANY signing as "Authorized Agent."

86.  The  "Notice of Sale" was signed by an agent of OCWEN employed by    T. D. SERVICES COMPANY falsely signing as "Trustee."

87.  The names and identities of those all the individuals who have sent payment demands to the Plaintiff are unknown to the Plaintiff at this time, and discovery is necessary to properly identify same.  Leave of the Court will be made to request an opportunity to file an amended complaint that fully and completely identifies the ongoing overt acts in this regard, as well as the identity of the  employee or agent who authored the payment demands.)

PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES

88.  The conduct described above by Defendants and their respective agents and employees, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Deed of Trust. However, despite such knowledge, said Defendants continued to demand and attempt to collect Plaintiffs' mortgage payments.

89.   Defendants engaged, and are engaging in, a pattern and practice of defrauding Plaintiff, in that, on information and belief, during perhaps the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees, as these payments belonged to the true beneficiary of the Note and Deed of Trust.

90.   On information and belief, at all times material Defendants  had, and has,

actual knowledge that Plaintiffs' accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate accounts.

91.    On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

92.    As a direct and proximate result of the actions of the Defendants, set forth above, Plaintiff overpaid in interest.

93.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged. Specifically because of the derogatory credit reporting on their credit report on behalf of Defendants,  and others, Plaintiff is unable to refinance out of their present loan, buy another property, or sell their home.

94.    As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiffs' home has been slandered, clouded, and has been rendered unmarketable.

95.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of their Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

96.    As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiffs' debt obligation.

97. The conduct of Defendants,  and one or more of the Doe defendants has led to the imminent loss of Plaintiffs' home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the costs associated with removing the cloud from their property title and attorneys' fees, in an amount to be proven at trial.

98.  The conduct of Defendants,   and one or more of the Doe Defendants' conduct, was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' note and Deed of Trust, yet they intentionally and

fraudulently covered up this defect by wrongfully recording multiple fraudulent Assignments and Substitutions of Trustee  and other documents, which would enable them to *illegally and fraudulently* collect on Plaintiffs' debt, undertake a fraudulent "Trustee's Sale," and consequently rendered the title to the property unmarketable.

99.  The title to Plaintiffs' Property has been rendered unmarketable and unsalable because of the multiple claims being made against Plaintiffs' debt and underlying security (the "Subject Property"). If the Assignments of the Deed of Trust, together with the Substitutions, and the "Trustee's Deed upon Sale" are  not cancelled and set aside, together with all other documents recorded and identified herein, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with their *true creditor* and exercise their right to verify and validate their debt.

100. Plaintiff has offered to and is ready, willing, and able to unconditionally tender their obligation.

101.  Plaintiffs' property was lost in foreclosure, and the issues that Plaintiff is raising are relative to the funding and note holder.

102.  That the notices and pending foreclosure have failed to conform with the provisions of California Civil Code Sections 1624,  2923.5,  2932.5 et seq., and Commercial Code section 3302 et seq.

103.  Plaintiff further alleges that California Civil Code section 2924 et seq. and its subparts are being applied to Plaintiff in a manner that is unlawful, because at least in part the party acting as the Trustee was not in possession of the original Note, that the Note when it was assigned to OCWEN, the assignment by FIRST GUARANTY FINANCIAL CORPORATION and its assigns, did not convey the power of sale because it violated the terms of California Civil Code section 2932.5, that the assignment, when it was made, that the Note executed by Plaintiff was no longer a negotiable instrument because the assignment was not physically applied to the Note pursuant to the holding of ***Pribus v. Bush,*** (1981) 118 Cal.App.3d 1003, 173 Cal.Rptr.

747, although there was sufficient room on the back of the Note to complete the assignment, and as such the planned foreclosure of Plaintiffs' subject property does not conform with the strict mandates of Civil Code section 2924. 76.

104.  The Gravamen of Plaintiff's complaint is that Defendants violated State laws which were specifically enacted to protect the public from such abusive, deceptive, and unfair conduct by Defendants, and that Defendants cannot legally enforce a non-judicial foreclosure.

105.  Plaintiff is a "debtor" as defined by the Rosenthal Act, *California Civil Code 1788.2(h)*.

106.  Defendants are engaged in the collection of debts from consumers using the mail and telephone.

107.  Defendants regularly attempt to collect consumer debts alleged to be due to another.

108.  Defendants are "debt collectors" as defined by the Rosenthal Act, California Civil Code §1788.2©.

109.  The purported debt which Defendants attempted to collect from Plaintiff was a "consumer debt" as defined by the Rosenthal Act, *California Civil Code §1788.2(f)*.

110.  The final stage of a foreclosure proceeding is a sale of the Subject Property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan.  In fact, none of the Securitizers, or any of their authorized agents, who have played a part in the non-judicial foreclosure proceedings were entitled to receive payment from the loan proceeds, or title to or possession of the Subject Properties, or to give instructions to any trustee on the deed of trust.  The making of the assertion in the foreclosure proceedings that the beneficiary was entitled to foreclose and the NODs and trustee sale based on amounts not properly owing is an act of fraud or deceit within the

Complaint for Damages, Injunctive Relief, Declaratory Relief

meaning of Cal. Civ. Code §2924h.

111.  The intent to securitize, the fraudulent acts and omissions involved in the origination, transfers of the Subject Loans, and securitization of the Subject Loans, were concealed from Plaintiff.

**FIRST CAUSE OF ACTION – DECLARATORY RELIEF; TO DETERMINE STATUS OF DEFENDANT'S CLAIMS [28 U.S.C. § 2201, 2202]**

112.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

113.  Section 2201(a) of Title 28 of the United States Code states:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than the actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

114.  Section 2202 of Title 28 of the United States Code states:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

1

2      115.  Plaintiff alleges that  Defendants do not have a secured or unsecured

3  legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and

4  that its purported assignment or substitution has no value since the Deed of Trust is

5  wholly unsecured. In the unlikely event the assignment or substitutions were properly

6  executed, the assignment would also render the Note and Deed of Trust to be

7  unsecured, such that irrespective of the validity of the assignments, the Deed of Trust is

8  wholly unsecured.

9      116.  At some time after December 17, 2007, Defendants  claim they have a

10  secured enforceable interest in, and perfected lien against, the Plaintiffs' Note, Deed of

11  Trust and Property.

12      117.  Thus, the competing allegations made by Plaintiff above establish that a

13  real and actual controversy exists as to the respective rights of the parties to this matter,

14  including ownership of the Property, and the competing rights of potential putative

15  creditors.

16      118.  Accordingly, Plaintiff request the Court make a finding and issue

17  appropriate orders stating that Defendants, have no right or interest in Plaintiffs' Note,

18  Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to

19  collect Plaintiffs' mortgage payments or enforce the terms of the Note or Deed of Trust

20  in any manner whatsoever, including exercise of the "power of sale."

21      119.  Plaintiff will suffer prejudice if the Court does not determine the rights

22  and obligations of the parties because: (1) Plaintiff will be denied the opportunity to

23  identify and document their true and correct creditor/lender and negotiate with them;

24  (2) Plaintiff will be denied the right to conduct discovery and have the claims of

25  Defendants, verified by a custodian of records who has personal knowledge of the loan

26  and all transactions related to it; (3) Plaintiff will be denied the opportunity to discover

27  the true amount they still owe minus any illegal costs, fees and charges and (4) and

28

1  Plaintiff will ultimately be stripped of their proprietary interest in the property by a

2  entity with no standing to undertake said action.

3        120.  Due to the actual case and controversy regarding competing claims and

4  allegations, it is necessary that the Court declare the actual rights and obligations of the

5  parties and make a determination as to whether the claims of  Defendants are

6  enforceable and whether they is secured by any right, title or interest in Plaintiffs'

7  Property.

8        121.  Furthermore, the conduct of Defendants, and each of them, as herein

9  described, was so malicious and contemptible that it would be looked down upon and

10  despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an

11  amount appropriate to punish Defendants and to deter others from engaging in similar

12  conduct.

13  **SECOND CAUSE OF ACTION – NEGLIGENCE**

14        122.  Plaintiff hereby incorporates by reference each and every one of the

15  preceding paragraphs as if the same were fully set forth herein.

16        123.  Defendants,  and Does 1 through 10, are jointly and severally liable for

17  their negligent and reckless conduct.

18        124.  Defendants,  as the purported beneficiaries of the Note and Deed of Trust,

19  as purported mortgage services, together with its agents and employees, including its

20  purported "trustees" has a duty to exercise reasonable care[1] and skill to follow

21  California law with regard to enforcement of monetary obligations, and to refrain from

22  taking or failing to take any action against Plaintiff that they did not have the legal

23  authority to do.  This includes not collecting or demanding mortgage payments when

24  they do not have the right to enforce the obligation, causing the Plaintiff to overpay in

25
---

26  [1] Normally, lenders and servicers do not owe a duty of care. *Nymark v. Heart Fed Savings and Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to

27  discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of

28  the tort. *Id.* (*citing Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of Plaintiffs' mortgage payments, credits, and debits (if MERS is in fact the legally authorized mortgage servicer for Plaintiff, which Plaintiff deny).

125.  Defendants  have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the Chain of Title to Plaintiffs' Property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to the subject property, and title to the property.

126.  Defendants breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the subject trust by the requisite closing date.

127.  As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, including attorney's fees, and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce the debt obligations against them.

### THIRD CAUSE OF ACTION – QUASI CONTRACT

128.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

129.  Defendants,  and others acting in concert with them for the pecuniary benefit of OCWEN, demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff.  Plaintiff reasonably relied upon Defendants'  assertion that it/they are/were entitled to the benefit of Plaintiffs' mortgage payments.

130.  Defendants,  and others acting in concert with them, knowingly accepted payments and retained them for its own use knowing Defendants had not acquired and never did acquire an interest in Plaintiffs' Note, such that they could accept or keep

Plaintiffs' payments. It would be inequitable for Defendants to retain the payments it received from Plaintiff that it did not have the legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

131.  Section 23 of the Deed of Trust states that:  "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."  The obligations to FIRST GUARANTY  FINANCIAL CORPORATION under the Deed of Trust were fulfilled when FIRST GUARANTY  FINANCIAL CORPORATION  received the balance on the Note as proceeds of sale of Plaintiffs' Note and Deed of Trust to a presently unknown entity, who on information and belief was NOT OCWEN, who has been unjustly enriched by collecting monthly payments from Plaintiff when it has no interest in their Note or Deed of Trust.

132.  Plaintiff seeks restitution for any payments made to OCWEN  including those payments made to others acting in concert with Defendants for its benefit that were not actually paid to the lender or beneficiary, if any.

**FOURTH  CAUSE OF ACTION- VIOLATION OF 15 U.S.C. § 1692, ET SEQ.**

133.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

134.  Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . including the false representation of  . . . the character, amount, or legal status of any debt . . . and the threat to take any action that cannot legally be taken…"

135.  In illegally attempting to collect on Plaintiffs' debt obligation in the manner described herein, Defendants, as the purported assignee  as purported mortgage servicer:

a.  Falsely represented the status of the debt, in particular, that it was due and owing to Defendants at the time the suit was filed;

b.  Falsely representing or implied that the debt was owing to Defendants  as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

c.  Threatened to take action, namely engaging in collection activities that cannot legally be taken by them;

d.  Did in fact take action, namely by recording a fraudulent "Assignment" of Deed of Trust, a fraudulent notice of "Default,"  and a fraudulent notice of "Trustee's Sale", when such action cannot legally be taken by them; and

e.  Attempted to collect on the promissory note under false pretenses; namely that Defendants were assigned Plaintiffs' debt when in fact they were not.

136.  The conduct described above, and more fully in the body of this complaint, is in violation of 15 U.S.C. § 1692, et seq and therefore the Plaintiff is entitled to any and all damages, rights, and remedies provided therein.

137.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

138.  Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq.

139.  Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code Section 532(f)(a)(4).

140.  California Business and Professions Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

141.  As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent.  This conduct is ongoing and continues to date.

142.  Defendants engage in unfair, unlawful, and fraudulent business practices with respect to mortgage loan servicing and related matters by, among other things:

a.  Executing and recording false and misleading documents;

b.  Executing and recording documents without the legal authority to do so;

c.  Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d.  Demanding and accepting payments for debts that were non-existent;

e.  Violating the Security First Rule;

f.  Reporting payments as late to credit bureaus without the legal right or authority to do so;

g.  Acting as a beneficiary without the legal authority to do so;

h.  Conducting a "Trustee's Sale" of the subject property without the legal authority to do so; and

i.  Other deceptive practices as described herein.

143.  As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

144.  As more fully described above, Defendants acts and practices are unfair and the harm cause by the conduct outweighs any benefits that the conduct may have.

145.  Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein Defendants violate several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

146.  Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

Complaint for Damages, Injunctive Relief, Declaratory Relief

147.  The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

148.  By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Code sections 17203 and 17204.

149.  As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon title to Plaintiffs' Property and Defendants have failed to remove this cloud from Plaintiffs' title.

150.  Plaintiff is entitled to an order compelling OCWEN,  and any other defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon their title and an order enjoining such Defendants from taking such action in the future.

**SIXTH CAUSE OF ACTION – ACCOUNTING**

151.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

152.  OCWEN has held itself out to be Plaintiffs' creditor  as Plaintiffs' mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[1]

153.  As a result of the aforementioned fraudulent conduct, Plaintiff paid OCWEN,  and other agents and employees of OCWEN, mortgage payments for a period of many years. However, for the reasons stated herein, none of the money was

---

[1] To state of cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impractical. 5 Within, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to Plaintiff that can only be ascertained by an accounting. See Within, California Procedure, Pleadings, section 776, p 233 (4th ed.).

actually owed to Defendants. For that reason, these moneys are due to be returned to the Plaintiff in full.

154.  The exact amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed, believes, and thereon alleges that the amount due to them exceeds $75,000.00.

**SEVENTH CAUSE OF ACTION – EXTORTION 18 U.S.C. § 1951(b)(2).**

155.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

156.  The Plaintiff is informed, and believe and thereon allege that in spite of having no legitimate, demonstrable, and/or documented interest in the Mortgage Note and Deed of Trust, the defendant OCWEN, by itself and through its agents and employees, has, as described above, undertaken multiple and ongoing overt acts to obtain moneys from the Plaintiff related to the Defendant OCWEN's false claim of ownership of subject mortgage note and deed of trust in violation of 18 U.S.C. § 1951(b)(2).

157.  As more fully described above, the Defendant, OCWEN though its agents and employees,   and Doe Defendants have caused to be delivered and communicated to the Plaintiff extensive writings and telephone calls falsely asserting a right to collect payments on behalf of the Defendant OCWEN under a false claim of a right to payments due under the subject Mortgage Note and Deed of Trust, as well as the filing and recording of multiple notices, assignments, and Deeds with the County Recorder designed to wrongfully threaten the Plaintiff with dispossession of their family home absent voluntary payments as demanded by and on behalf of the Defendants.

158.  The Plaintiff is informed, and believes and thereon alleges that the conduct herein described was initiated by or on behalf of the Defendant OCWEN and the co-defendants named herein, and its agents and/or employees, and served to

threaten the Plaintiff with loss of their property through the use of California's non-judicial foreclosure statutes absent receipt of the payments falsely demanded by or on behalf of the Defendant OCWEN. The Plaintiff is informed, and believes and thereon alleges that at no time was the Defendant OCWEN entitled to receive the payments demanded and received.

159.  The Plaintiff is informed, and believes and thereon alleges that the Defendant OCWEN, and its co-defendants, knows Defendant OCWEN has no right to seek or demand any payments under the subject Mortgage note.

160.  Based on the threats and demands initiated by or on behalf of the Defendant OCWEN,   and others, the Plaintiff has paid the Defendant OCWEN , directly and by way of the co-defendants named herein and others, in excess of $75,000.00, which the Plaintiff is informed, and believes and thereon alleges has been wrongfully demanded and received by or on behalf of the Defendant OCWEN based on a false claim of ownership of the subject Mortgage Note and Deed of Trust. Said demands were made inclusive of a direct and real threat of use of the non-judicial foreclosure process to force the Plaintiff to voluntarily make the payments as demanded or risk a non-judicial foreclosure, which the Plaintiff would be powerless to prevent given the status of California law, and in fact did take place on June 11, 2012 as threatened.

161.  The exact amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions as demanded in the sixth cause of action. Plaintiff is informed and believes and thereon alleges that the amount due exceeds $75,000.00.

162.  The act of foreclosure on Plaintiffs' property, by definition, would cause the Plaintiff to be dispossessed of both their ownership and possessory interest in the subject property, and would result, if ultimately successful, in the Plaintiffs' forcible eviction from their property by operation of law.

163.  As a proximate result of the Defendants threats to deprive the Plaintiff of their property absent voluntary tender of the moneys demanded, which payments the Plaintiff is informed, and believes and thereon alleges were fraudulently demanded and received by the Defendants, the Plaintiff has tendered the sum of no less than $75,000.00 to the Defendants, by reason of which the Plaintiff has been damaged in the sum of no less than $75,000.00.

164.  The Plaintiff is informed, and believes and thereon alleges that the aforementioned conduct of the Defendants was an intentional act designed to extort moneys from the Plaintiff under a threat of use of the California non-judicial foreclosure statutes designed to deprive the Plaintiff of their property in violation of 18 U.S.C. §1951(b)(2) which was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

**WHEREFORE,** Plaintiff prays as follows:

(a)     For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000,000, against Defendants OCWEN, and DOES 1 through 10 inclusive;

(b)     For punitive and exemplary damages in an amount to be determined by the Court against all Defendants OCWEN, and DOES 1 through 10 inclusive;

(c)     For an order compelling Defendants OCWEN,  and DOES 1 through 10 inclusive to remove any instrument which does not or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including any purported Assignment of Deed of Trust, and other document filed with the County Recorder relative to the subject property;

(d)     For an order finding that Defendants OCWEN, and DOES 1 through 10 inclusive have no legally cognizable rights as to Plaintiff, the Property, Plaintiffs' Promissory Note, Plaintiffs' Deed of trust or any other matter based on contract or any of the documents prepared by Defendants OCWEN and DOES 1 through 10 inclusive, tendered to and executed by Plaintiff;

Complaint for Damages, Injunctive Relief, Declaratory Relief

(e)     For the Court to issue an order restraining Defendants OCWEN,  and DOES 1 through 10 inclusive, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of  this matter;

(f) For an order compelling Defendants OCWEN,  and DOES 1 through 10 inclusive to disgorge all amounts wrongfully taken by them from Plaintiff and returning same to Plaintiffs' interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

(g)     For a Declaration of Rights and Obligations as between the Plaintiff an all Defendants with respect to the Note, Mortgage  and Deed of Trust that is the subject of this complaint;

(h)     For costs of suit incurred herein;

(i)   For reasonable attorney fees incurred, and

(j) For such other and further relief as the Court may deem proper.


Dated:  July 1, 2013                                    /s/ Joseph La Costa
                                                        Joseph La Costa
                                                        Attorney for Plaintiff

Complaint for Damages, Injunctive Relief, Declaratory Relief

## **VERIFICATION**

I am the Plaintiff in the above entitled action and I have read the foregoing Complaint for Damages, Injunctive Relief, Declaratory Relief and know the contents thereof.  The same are true of my own knowledge, except as to those matters which are therein alleged on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/1/2013

GREGORY SHULL

---

Complaint for Damages, Injunctive Relief, Declaratory Relief

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GREG O. SHULL

**(b)** County of Residence of First Listed Plaintiff  <u>San Diego</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph La Costa, SBN 108443
7840 Mission Center Court, Suite 104, San Diego, CA 92108
Telephone 1-619-922-5287

## DEFENDANTS

OCWEN FINANCIAL SERVICES SRL, LLC , a Florida Corporation, doing business as T. D. SERVICES COMPANY, and DOES 1 TO 10

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

'13CV1545 GPC RBB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District (specify)
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28:1345

Brief description of cause:
Fraud and declaratory relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*  JUDGE _____  DOCKET NUMBER _____

DATE
07/01/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____